LAURINE H. GHENT *v.* PLANNING COMMISSION OF THE CITY OF WATERBURY ET AL.
(14195)

PETERS, C. J., CALLAHAN, COVELLO, BORDEN and F. X. HENNESSY, Js.

Argued May 2—decision released July 16, 1991

*I. Milton Widem,* with whom were *Emily N. Roisman* and, on the brief, *Melanie P. O'Brien,* for the appellants (defendant Vincent B. LoRusso, Sr., et al.).

*Robert E. Ghent,* for the appellee (plaintiff).

COVELLO, J. This is an appeal from a judgment of the Superior Court sustaining the plaintiff's appeal from a decision of the planning commission of the city of Waterbury (commission). The issues presented are: (1) in an appeal from a planning action, does the failure of the planning commission to return a transcript of its proceedings to court deprive the court of subject matter jurisdiction; (2) are the commission's regulations authorizing dead-end streets when through streets are "impractical" so lacking in precision that they furnish an inadequate standard by which to guide the commission and the public; and (3) does the phrase in the commission's regulations that "Waivers may be granted

in accordance with Section 8-26 of the [G]eneral [S]tatutes" provide a legally adequate description of the circumstances under which the commission may waive the requirements of its own regulations. We conclude that: (1) the failure to return the transcript to the trial court does not deprive the trial court of subject matter jurisdiction; (2) the use of the word "impractical," without more, does not furnish an adequate standard for determining when dead-end streets shall be permitted; and (3) the commission's waiver procedure, by simply referring to General Statutes § 8-26, does not contain adequate standards to determine under what conditions a waiver may be granted. We therefore affirm the judgment of the trial court that sustained the plaintiff's appeal.

The record discloses that on October 19, 1988, the defendants Vincent B. LoRusso, Sr., and Bartholomew LoRusso, Jr., filed an application for approval of a subdivision plan with the commission. The proposed subdivision included a 1295.65 foot long dead-end street. Section 5.6 of the commission's subdivision regulations provided: "Dead-end streets will be approved . . . only when the Commission feels that the extension of the street is impractical. Streets designed to have one end permanently closed shall not exceed 750 feet in length . . . . Dead-end streets longer than 750 feet are not permitted unless prior approval is given by the . . . Commission."

The commission voted to approve conditionally the proposed subdivision and published the required notice of its action.[1] On December 7, 1988, the plaintiff, Lau-

---

[1] The commission's minutes of its November 14, 1988 meeting reflect the following: "VOTED: That the City Plan Commission conditionally approves of the Subdivision Map of Tanglewood Estates, Purdy Road, Waterbury, Ct., Dated: 10/06/88, Scale: 1″ = 40′, consisting of thirty (30) Lots, R.S. Zone, Meyers Associates, Surveyors, Waterbury, CT., Owner/Applicant: Vincent B. LoRusso, Sr. and Bartholomew LoRusso, Jr., 109 Nichols Drive,

rine H. Ghent, an owner of property abutting the proposed subdivision, appealed to the Superior Court pursuant to General Statutes § 8-8.[2]

The trial court concluded that a waiver of the commission's regulations was required in order to approve a dead-end street longer than 750 feet as such streets were not permitted under the commission's regulations. The trial court further concluded that the regulations were silent as to the conditions under which a waiver of the dead-end street prohibition might be granted. This being the case, the trial court concluded that the waiver provisions of the commission's regulations lacked the specificity required by General Statutes § 8-26[3] and, therefore, rendered judgment sustaining the appeal. The defendants appealed to the Appellate court. We transferred the matter to ourselves pursuant to Practice Book § 4023 and now affirm.

## I

The defendants first claim that the trial court was without jurisdiction to hear the appeal because the

Waterbury, CT., subject to approval by the Health Department concerning on-site sewage facilities, approval by the Bureau of Engineering, the receipt of a Performance Bond to cover the cost of street improvements and the waiver of the cul-de-sac street which is longer than seven hundred and fifty (750) feet. This Subdivision is also subject to associated fees relating to this development."

[2] General Statutes (Rev. to 1987) § 8-8 (a) provides: "Any person . . . aggrieved by any decision of said board, or any person owning land which abuts or is within a radius of one hundred feet of any portion of the land involved in any decision of said board . . . may . . . take an appeal to the superior court for the judicial district in which such municipality is located . . . ."

[3] General Statutes § 8-26 provides in relevant part: "Such regulations may contain provisions whereby the commission may waive certain requirements under the regulations . . . in cases where conditions exist which affect the subject land and are not generally applicable to other land in the area, *provided that the regulations shall specify the conditions under which a waiver may be considered* . . . ." (Emphasis added.)

administrative record was incomplete. Specifically, the defendants argue that the commission's failure to file in court a transcript of the public hearing before the commission in connection with the subdivision application deprived the court of subject matter jurisdiction.

General Statutes (Rev. to 1987) § 8-8 (c) states: "[The] board *shall* be required to return either the original papers acted upon by it and constituting the record of the case appealed from, or certified copies thereof and a copy of the transcript . . . ." (Emphasis added.) The defendants argue that an appeal to the court from an administrative agency exists only under statutory authority, that strict compliance with the statutory provisions is required, and that failure to comply renders the appeal subject to dismissal. *Citizens Against Pollution Northwest, Inc.* v. *Connecticut Siting Council,* 217 Conn. 143, 152, 584 A.2d 1183 (1991). Because the commission failed to include the required transcript, the defendants argue that the court lacked jurisdiction to consider the appeal.

Section 8-8 nowhere states that failure to provide a complete record constitutes a jurisdictional defect. We are constrained to read a statute as written; *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987); and we may not " 'read into clearly expressed legislation provisions which do not find expression in its words . . . .' " *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236 (1974). Further, § 8-8 (e) specifically states: "The court . . . shall allow any party to introduce evidence in addition to the contents of the record *if (1) the record does not contain a complete transcript of the entire proceedings before the board,* including all evidence presented to it pursuant to section 8-7a . . . ." (Emphasis added.) Because § 8-8 specifically provides for an evidentiary procedure to supplement the record in the event a complete transcript of the proceedings before the board is

unavailable, it is scarcely arguable that the failure to provide the required transcript in the first instance constitutes a jurisdictional defect. If the trial court lacked subject matter jurisdiction of the appeal, it would be without authority to conduct the evidentiary hearing called for by the statute. We conclude that the absence of a complete record did not divest the trial court of jurisdiction to entertain the appeal.[4]

## II

The defendants next claim that the standards in the planning regulations, taken as a whole, are sufficiently precise to permit the commission to approve subdivi-

---

[4] We note further that while General Statutes (Rev. to 1987) § 8-8 (c) states that the record "shall" be transmitted to the court, we have held that in the interpretation of statutes the word "shall" may have a meaning that is directory rather than mandatory. *Fidelity Trust Co.* v. *BVD Associates,* 196 Conn. 270, 278–79, 492 A.2d 180 (1985). "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or convenience. *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345 (1951). If it is a matter of substance, the statutory provision is mandatory. *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 451, 190 A.2d 591 (1963). If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. *Winslow* v. *Zoning Board,* 143 Conn. 381, 388, 122 A.2d 789 (1956). 'Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply.' *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, 265 A.2d 75 (1969)." *Fidelity Trust Co.* v. *BVD Associates,* supra, 278.

Section 8-8 (c) clearly is designed to encourage order and dispatch in proceedings. This section is cast in affirmative words, contains no penalty for noncompliance and purports only to establish a procedure for ensuring that the trial court is provided as full a record as possible. We conclude therefore that its terms are directory, and not mandatory, and that failure to meet its requirements does not deprive the court of jurisdiction. Under the circumstances of this case, in which neither party informed the trial court of the absence of the transcript and because the underlying facts are undisputed, we conclude that the purpose of § 8-8 has been met and that dismissal of the case at this point is unwarranted.

sion plans that include dead-end streets. Section 5.6 of the planning regulations provides: "Dead-end streets will be approved by the Commission only when the Commission feels that the extension of the street is *impractical*." (Emphasis added.) The defendants argue that the regulations, viewed as a whole, impose an "impracticality" standard on the decisions of the commission. Thus, a dead-end street is permissible only if the alternatives are "impractical." Furthermore, § 1.1 of the regulations states that the commission must consider plans that will result in "the best possible urban environment" and "promote the health, safety, or general welfare." The defendants further claim that it is unrealistic to demand detailed and complex standards in these circumstances and that every intendment must be made in favor of the validity of a regulation. Thus, the defendants argue that the regulations, construed as a whole, offer sufficient guidance for the commission. We disagree.

"Vague regulations which contain meaningless standards lead to ambiguous interpretations in determining the approval or disapproval of different subdivisions. Adequate, fixed and sufficient standards of guidance for the commission must be delineated in its regulations so as to avoid decisions, affecting the rights of property owners, which would otherwise be a purely arbitrary choice of the commission; such a delegation of arbitrary power is invalid." *Sonn* v. *Planning Commission,* 172 Conn. 156, 162, 374 A.2d 159 (1976). "The subdivision regulations upon which the commission, acting administratively, should rule must contain known and fixed standards applying to all cases of a like nature, and must conform to the principle that a regulation, like a statute, cannot be too general in its terms. *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission,* [160 Conn. 109, 115–16, 273 A.2d 880 (1970)]. The test of a permissible subdivision regulation is whether

'the criteria contained in the commission's regulations are as reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations. *American Power & Light Co.* v. *Securities & Exchange Commission,* 329 U.S. 90, 105, 67 S. Ct. 133, 91 L. Ed. 103 [1970]; *Ours Properties, Inc.* v. *Ley,* 198 Va. 848, 851, 96 S.E.2d 754 [1957]; 1 Am. Jur. 2d, Administrative Law, § 118. Although some of the standards may be general in their terms, they . . . [must be] reasonably sufficient to identify the criteria to be evaluated in their enforcement in order to meet the many variables involved since it would be impossible to establish one standard which would adequately cover all future cases. *Blakeman* v. *Planning Commission,* 152 Conn. 303, 307, 206 A.2d 425 [1965].' *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 680, 236 A.2d 917 [1967]; *Nicoli* v. *Planning & Zoning Commission,* 171 Conn. 89, 93, 368 A.2d 24 [1976]." *Sonn* v. *Planning Commission,* supra, 159–60. The regulations in this instance do not meet these standards.

In *Sonn* v. *Planning Commission,* supra, we considered the language of an allegedly ambiguous subdivision regulation and stated: "[T]he words 'practical difficulties,' without additional guidelines, are in themselves insufficient to afford a guide to determine where a variation should be granted. . . . The facts show clearly the need for a more precise standard governing [this] unbridled, ambiguous and vague exception . . . ." Id., 160. We view the word "impractical," as used in § 5.6, in the same light as "practical difficulties," i.e., as being so vague and imprecise that neither the commission nor the public is fairly apprised of the circumstances under which a dead-end street would be permitted.

This, however, does not end the discussion of the issue, as it is unclear whether the "impractical" standard controls the situation that confronted the commission here. Section 5.6 goes on to state: "Dead-end streets longer than 750 feet are *not permitted* unless *prior approval* is given by the City Plan Commission." (Emphasis added.) The regulation is silent as to the circumstances under which the commission's "prior approval" may be obtained for the 1295.65 foot long street that was depicted in the defendants' proposed subdivision plan.

Confronted with this apparent anomaly in the construction of § 5.6, the trial court correctly reasoned that the undefined "prior approval" described in § 5.6 was the functional equivalent of a waiver of the commission's regulations, a procedure that was specifically authorized by § 8.6 of the commission's regulations. Section 8.6, however, provides no solution to the standardless language of § 5.6, because it states: "Waivers may be granted in accordance with Section 8-26 of the [G]eneral [S]tatutes." General Statutes § 8-26 while authorizing waivers, specifically requires: "[T]he regulations shall specify the conditions under which a waiver may be considered and shall provide that no waiver shall be granted that would have a significant adverse effect on adjacent property or on public health and safety." Thus, § 8-26 does not, in any particularized fashion, illuminate the general authority to issue waivers set forth in § 8.6 of the commission's regulations. We agree, therefore, with the trial court's conclusion that the commission's regulations "are totally void of standards to measure the conditions under which a waiver of the dead-end road length limitation would be appropriate."

The judgment is affirmed.

In this opinion the other justices concurred.